AYRES, Judge.
This is an expropriation proceeding wherein the State of Louisiana, through the Department of Highways, acquired a tract of land comprising 6.955 acres for highway purposes, that is, for use in the construction of Interstate 20, a limited and controlled access thoroughfare.
Before the taking, defendants’ property consisted of a tract of land comprising 82.-405 acres, generally rectangular but elongated in shape north and south. The portion taken comprises a strip 300 feet wide with an average length of 1009.085 feet, running east and west through the approximate middle of the tract of which there remain north of the proposed highway 28.-515 acres and to the south 46.935 acres. The remainders were isolated from one another except over a three-to-four-mile circuitous route through adjoining private property. There was, in fact, after the taking, no access to the south remainder. This remainder was landlocked acreage.
At the time of the taking, on June 6, 1967, appraisers for the State valued defendants’ property at $350.00 per acre and deposited in the registry of the court the sum of $2,450.00 as just compensation for the land taken. An estimate of severance damages to the south remainder was in the sum of $9,400.00, which amount was likewise deposited in the registry of the court, making a total deposit of $11,850.00 as compensation for the property taken and the damages sustained to the remainder.
After trial, the court concluded from the record it had been established that the property taken (6.955 acres) had a value of $600.00 per acre, or $4,173.00, and that severance damages to the south remainder (46.935 acres) was $450.00 per acre, that is, $21,120.75. Thus the court calculated *675 that compensation for the property taken and the severance damages to the remainder amounted to $25,293.75, subject to a credit of the deposit in the sum of $11,850.00, resulting in a balance due defendants of $13,443.75. From an award accordingly made, the State, through the Department of Highways, appealed.
Only involved are the value of the property taken and the severance damages sustained to the south remainder. The differences in the value of the land taken and of the damages sustained as claimed by the State from those as claimed by defendants and as upheld by the court are based on a difference in classification of the value of the property as to its highest and best use. The State contended that the highest and best use of the property was for agricultural purposes, whereas defendants contended, and the court found, that such highest and best use of the property was for suburban development.
Appraisers J. Wayne Medley and W. Dean Carter, produced by the State, testified that, in accordance with their classification, the highest and best use of the property was for agricultural purposes; that the property before the taking had a value of $350.00 per acre and that the south remainder, after the taking, had a value of $150.00 per acre. Medley gave no consideration to the property as suitable for suburban homesite development. Carter said the property was suitable for only one or two homesites. Medley refused to consider as “comparables” a sale in 1961 of 12 acres on Nelson Bend Road which brought an average of $602.84 per acre and also another sale of six acres at $1,000.00 per acre. Carter, as did Medley, considered as “comparables” sales of farm lands only. The tract of land from which the expropriation was made was located only two-tenths of a mile from the south and east corporate limits of the Town of Ray-ville.
The defendants produced two expert witnesses, Gilbert Faulk and J. Carson Dop-son. Faulk was of the opinion that the highest and best use of the property was for a potential suburban development. In commenting upon Faulk’s testimony, the court, in a written opinion, stated:
“. . . He valued the subject property at $600.00 per acre, and in support of that value used four comparables, being sales from Binion to Harper of 15 acres in 1964 at $400.00 per acre, Binion to Lyles of 10 acres in 1967 at $1,000.00 per acre, Binion to Brown of 10 acres in 1966 at $500.00 per acre, and Binion to Parks of 5 acres in 1966 at $783.00 per acre. These lands are near the subject property and the Town of Rayville, and considering these sales this witness valued the subject property at $600.00 per acre. He valued the South remainder at $100.00 per acre after the taking.”
In commenting on the testimony of Dop-son, the other witness for defendants, the court stated that it believed Dopson was most knowledgeable about property values in the vicinity of Rayville because of his long experience in the area. Dopson had been in the real estate business in Rayville and vicinity for many years, and had actually bought, sold, and developed property there for subdivisions and homesites. In its written opinion, the court stated it gave great weight to Dopson’s opinions “because of his peculiar knowledge of the situation.” The court reiterated that the subject property, in Dopson’s opinion, was desirable for subdivision purposes because of its location and because its highest and best use was for that purpose. After considering several comparable sales, Dopson placed a value of $800.00 per acre upon the subject property. Cited were sales made in a subdivision immediately north of the northwest corner of the subject property during the period from 1951 to 1958, land which was sold at from $500.00 to $1,000.00 per acre. Another tract, a quarter of a mile west of Rayville, sold for subdivision purposes for $1,500.00 per acre. Dopson’s testimony corroborated that of the other witnesses that the-value of the-south remainder,, aft *676 er the taking, was $150.00 per acre. The court concluded that the subject property had a minimum value of $600.00 per acre for suburban development purposes.
The record, in our opinion, amply supports the conclusions reached by the trial court, with respect to which we find no manifest error or basis for disagreement.
The judgment appealed is accordingly affirmed.
Affirmed.